**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

FILED
04 OCT 21 PM 4: 12

CLERK ALBUQUERQUE

THADDEUS M. KORBIN,

    Plaintiff,

vs.

                                    CV-03-1167 MV/ACT

PUBLIC SERVICE COMPANY OF
NEW MEXICO,

    Defendant.

## DEFENDANT PUBLIC SERVICE COMPANY OF NEW MEXICO'S RESPONSE TO PLAINTIFF'S MOTION TO COMPEL RESPONSES AND DOCUMENTS TO FIRST AND SECOND SET OF DISCOVERY

COMES NOW Defendant Public Service Company of New Mexico ("PNM"), by and through its counsel, Kelcher & McLeod, P.A. (Robert C. Conklin and John K. Ziegler), and submits this Response to Plaintiff's Motion to Compel Responses and Documents to First and Second Set of Discovery (Plaintiff's Motion to Compel").

**I.**    **Introduction**

In August 2002, PNM engaged in a corporate downsizing and realignment effort (the "2002 Downsizing") that reduced PNM's workforce by eliminating ("impacting") certain positions. Plaintiff's claims against PNM in the above-captioned lawsuit arise from the 2002 Downsizing. In short, Plaintiff asserts claims of age and pension plan discrimination, retaliation, and breach of contract.

On June 25 and 28, 2004, Plaintiff served PNM with Requests for Admissions, Interrogatories and Requests for Production (collectively "Plaintiff's Discovery Requests"). As discussed more fully below, Plaintiff's Discovery Requests are extremely broad, seek irrelevant

50

information, and are burdensome.  Plaintiff made little effort to tailor his discovery requests to fit the nature and scope of Plaintiff's claims against PNM.  To the contrary, Plaintiff's requests reveal a pattern of exceedingly overbroad inquiries that, if literally complied with, would require PNM to produce tens of thousands of pages of discovery, much of which would be entirely irrelevant to Plaintiff's claims and would unnecessarily violate the privacy and confidentiality rights of PNM and its employees.[1]

In response to Plaintiff's Discovery Requests, PNM has worked diligently and in good faith to produce all documents in its possession that are relevant to Plaintiff's claims or that could conceivably lead to the discovery of relevant information.  Additionally, PNM has provided direct and clear answers to each of Plaintiff's interrogatories and requests for admission that are properly stated pursuant to the Federal Rules of Civil Procedure.  In fact, PNM has produced thousands of pages of discovery that are directly responsive to Plaintiff's request, including the documents that were generated during the deliberations that led to the decision to eliminate Plaintiff's position.

On August 30, 2004, Plaintiff submitted a letter to PNM raising a number of his concerns about the discovery responses.  (Let. from Wayne Suggett to John Zeigler dated August 30, 2004, attached as **Ex. A.**)  This letter contained no efforts to compromise over the scope of Plaintiff's discovery requests.  In response, PNM agreed to provide some of the information and documents Plaintiff requested, and asked Plaintiff to explain why he believed he was entitled to

---

[1] By way of example, Plaintiff's Interrogatory No. 8 to PNM asks for the name, address and telephone of every PNM employee who has sued PNM for any employment-related claim since 1974. (PNM's Interrogatory Answers, attached as Exhibit 2 to Plaintiff's Motion to Compel, at 12-13).  Similarly, Plaintiff's Request for Production No. 12 demands "all documents, including skill set assessment and voluntary RIF programs, related to your reduction-in-force, reorganizations or employee layoff during the past twenty (20) years."  (PNM's RFP Responses, attached as Exhibit 3 to Pl.'s Mtn. to Compel at 8.)

other information. (Let. from John Zeigler to Wayne Suggett dated Sept. 10, 2004, attached as **Ex. B.**)[2] Despite the request for more dialogue, Plaintiff never responded and instead filed the present Motion to Compel.

Plaintiff falsely claims in his Motion to Compel that PNM has "basically refused to produce any records related to the reorganization and RIF." (Pl.'s Mtn. to Compel at 2). Plainly, this accusation is not true. As illustrated below, PNM produced extensive documentation related to the reorganization and the pension plan. Thus, when PNM's responses to Plaintiff's Discovery Requests are scrutinized, it becomes clear that PNM has fully complied with its discovery obligations in this case and that Plaintiff's insistence that he is entitled to additional information is unreasonable and abusive.[3]  Plaintiff's Motion to Compel is filled with unsupported arguments and mischaracterizations of the evidence and of PNM's discovery responses. "When, as is apparent here, a party brings an initial action without any factual basis evincing specific misconduct by the defendants and then bases extensive discovery requests upon conclusory allegations in the hope of finding misconduct, the plaintiff abuses the judicial process." Munoz v. St. Mary-Corwin Hosp., 221 F.3d 1160, 1169 (10th Cir. 2000). Plaintiff should not be permitted to abuse the discovery tools in this manner, and his Motion to Compel should be denied.

---

[2] A complete copy of the September 10, 2004, letter is attached hereto because Ex. 4 of Plaintiff's Motion includes only two pages of the seven-page letter.
[3] Plaintiff complains that no privilege log has been provided. However, counsel for both parties agreed that a privilege log would be forthcoming, and it was in fact provided during the week of October 18, 2004. Thus, this issue is moot.

## II.   **Argument**

### A.   **The standards of discovery**

Discovery is governed by Rule 26 and must be "relevant to the subject matter involved in the pending action" and "must comport with the traditional notions of relevancy." Robbins v. Camden City Board of Education, 105 F.R.D. 49, 54-55 (D.N.J. 1985); see also Rich v. Martin-Marietta Corp., 522 F.2d 333, 343 (10th Cir. 1975). "Discovery should be tailored to the issues involved in the particular case." Robbins, 105 F.R.D. at 55. Overly broad requests, because of their dragnet effect, are not reasonably calculated to lead to admissible evidence even if some of the responsive information could be relevant. See In re One Bankcorp Securities Litigation, 134 F.R.D. 4, 11 (D.Me. 1991) (requests seeking all communications held facially overbroad and not reasonably calculated to produce relevant evidence or lead to the discovery of relevant information); Amcast Indus. Corp. v. Detrex Corp., 138 F.R.D. 115, 121 (N.D.Ind. 1991) (request requiring party to produce all documents relating to any clean-up action, regardless of whether the action bore any similarity to the subject of the complaint, constituted not merely a "fishing expedition but . . . an effort to drain the pond and collect the fish from the bottom"). Discovery, even in civil rights cases, "must comport with the traditional notions of relevancy and must not impose an undue burden on the responding party." Robbins, 105 F.R.D. at 55 (citing Rich, 522 F.2d at 343).

### B.   **Plaintiff's Requests for Admissions**

#### 1.   **Request for Admission No. 2**

Request for Admission No. 2 asks PNM to admit that the only impacted employees who have been rehired were those who did not file discrimination claims against PNM. (Pl.'s Mtn. to

4

Compel, Ex. 1 at 2). PNM objected and then admitted that the request was true, but provided a qualification in order to prevent the misleading inference that would arise from an unqualified admission. Specifically, PNM clarified that "most of the employees laid off in the August 2002 reorganization have not applied for jobs at PNM, and two of the three impacted employees who have been rehired are over 40." (Id.) PNM's use of a qualified admission was entirely proper under Rule 36 and should not be stricken as "nonresponsive clutter" as Plaintiff requests.

Rule 36(a) provides that "when good faith requires that a party qualify an answer or deny only a part of the matter of which an admission is requested, the party shall specify so much of it as is true and qualify or deny the remainder." In discussing this provision of Rule 36, Moore's Federal Practice explains that the use of a qualification is appropriate when a request is "ostensibly true, but the responding party cannot in good faith admit it without some necessary contextual explanation to remedy the improper inferences." 7 Moore's Federal Practice § 36.11[5][a] (2004). In Swarthmore Radiation Oncology, Inc. v. Lapes, 1993 WL 475507, *1 (E.D.Pa. 1993), the district court considered a party's response to a request for an admission in which the party admitted the truth of the statement but included "[c]onclusory statements" about the ultimate legal issues in the case. While the inclusion of this information was improper, the court stated that the party, after admitting that the statement was true, "may offer a succinct factual explanation of any additional details which, if omitted, would render the admission misleading." Id.; see also Diederich v. Department of Army, 132 F.R.D. 614, 619 (S.D.N.Y. 1990) ("Generally, qualification is permitted if the statement, although containing some truth, standing alone out of context of the whole truth . . . convey[s] unwarranted and unfair inferences.") (internal citations omitted).

5

In PNM's case, the requested admission would clearly give rise to misleading and unfair inferences if made without qualification. Specifically, as drafted by Plaintiff, the admission would imply that PNM has considered applications for reemployment from most or all of the fifteen employees who have sued PNM as a result of the 2002 Downsizing and that PNM has declined to hire any of them. Given that not all of the employees terminated as part of the Downsizing have actually applied for a new position with PNM, such an inference would be unfairly prejudicial to PNM, especially given that three of the impacted employees who have been rehired are over the age of 40. Accordingly, the qualifying language in PNM's answer to Request No. 2 was proper and should not be stricken.

### 2.     Request for Admission Nos. 6 and 7

Request No. 6 asks PNM to admit that PNM "did not instruct [its] hiring or interviewing employees/representatives in or prior to 1977 to inform employees or prospective employees that their employment with PNM was 'at will' and could be terminated at anytime for any legal reason." (Pl.'s Mtn. to Compel Ex. 1, at 3-4). Request No. 7 asks PNM to admit that prior to 1985 PNM did not have any written statement or materials that were provided to employees or prospective employees stating that employment with PNM was at-will. (Id.)

In response, PNM properly objected to these requests on the grounds that they are overbroad, seek information irrelevant to Plaintiff's claims, and are unduly burdensome. Without waiving these objections, PNM explained, as specifically required by Rule 36, that after a reasonable inquiry, it was not able to gather sufficient information to either admit or deny Plaintiff's requests. PNM then explained that it is impossible to admit or deny the requests because the information required to admit or deny the requests is not reasonably available.

6

Plaintiff argues that "[t]racking the language of Rule 36(a) is insufficient" and that the response must set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. This argument ignores the plain fact that PNM did provide in detail why it cannot admit or deny the requests. PNM provided an explanation in both its response and in its good faith letter to Plaintiff. (Pl.'s Mtn. to Compel, Ex. 1 at 3-4; Exhibit B at 2.)

As explained in PNM's response to Request No. 6, the request is unduly burdensome to PNM and impossible to answer. In order to gather sufficient information to conclusively admit or deny the request, PNM would have to talk with every PNM employee involved in PNM's hiring process prior to 1977 as well as search every PNM document created since PNM's formation to determine whether any written record was made by PNM concerning the instruction that it gave to its "hiring or interviewing" employees about the at-will doctrine. Obviously, given the large size of PNM's workforce, the location of its offices throughout the state of New Mexico, the fifty-year period of time for which Plaintiff has requested this information, and the fact that many of the documents that remain from the early decades of PNM's operation no longer exist, this request cannot be admitted nor denied.[4]

In addition, Request No. 6 is overbroad and therefore seeks an admission regarding irrelevant information. Plaintiff states that this request is relevant to his implied contract claim. (Pl.'s Mtn. to Compel at 3). What might conceivably be relevant to Plaintiff's claim is evidence regarding Plaintiff's "reasonable expectation" at the time he became employed by PNM. Hartbarger v. Frank Paxton Co., 115 N.M. 665, 672, 857 P.2d 776, 783 (1993). However,

---

[4] Another example of Plaintiff's counsel making a conclusory statement not supported by any evidence is the argument that the "reality is, PNM never told new hires and employees that their employment with the Company was at will . . . ." This statement begs the question: How does Plaintiff know every statement that may or may not have taken place over the course of his employment?

7

Plaintiff does not limit his request to an admission regarding his hiring. Instead, Plaintiff seeks
to obtain an admission regarding every communication that PNM made to its "hiring or
interviewing" employees over the approximately fifty years that PNM was in operation prior to
1977. Plaintiff cannot establish that communications made to PNM's hiring employees many
decades prior to Plaintiff's employment are relevant to Plaintiff's reasonable expectations at the
time that he was hired. This request is grossly overbroad, and therefore, the Court should
determine that no further response is necessary. See Horizon Holdings, L.L.C. v. Genmar
Holdings, Inc., 209 F.R.D. 208, 213 (D.Kan. 2002) (when a request is overly broad, the
requesting party runs the risk that the court will order no further information be produced);
Mackey v. IBP, Inc., 167 F.R.D. 186, 198 (D.Kan. 1996).

      3.     **Request for Admission No. 15**

Request No. 15 asks PNM to admit that it has "never fired an employee for other [sic]
than performance or policy violation reasons, other than as part of a company-wide reduction in
force, layoff, or reorganization." (Pl.'s Mtn. at Ex. 1, p. 8.) PNM objected to this request on the
grounds that it was overbroad, sought irrelevant information, and was burdensome because the
temporal scope exceeded the needs of this case. Without waiving the objections, PNM denied
the request. Plaintiff then asked in Interrogatory No. 2 that PNM identify the individual who
supports the denial and list the documents that support the denial. PNM stated that Anna Ortiz
could testify that employees "have been terminated for reasons other than the reasons stated,"
and provided an example of departmental, as opposed to company-wide, reorganizations.
(Pl.'s Mtn. at Ex. 2, p. 4.)

Plaintiff now, for the first time, complains that this answer is "evasive and incomplete." PNM provided a sufficient basis for its denial, and Plaintiff can question Ms. Ortiz about her knowledge at her upcoming deposition. Moreover, providing the list this interrogatory requests would require PNM to search all records of all terminations since the founding of the company, which is unduly burdensome. It would also unreasonably invade the privacy of terminated employees. See Section II.C.10. In addition, Plaintiff failed to make a good faith effort to resolve his complaint regarding the response. (Ex. A.) In his good faith letter, no mention is made of the response to Request No. 15 or the portion of the answer to Interrogatory No. 2 that addresses it. As a result, Plaintiff did not comply with Fed. R. Civ. P. 37(a)(2)(B), which requires the movant to confer or attempt to confer in good faith in an effort to secure the information without court action. As a result, this Court should summarily deny Plaintiff's request for additional information in response to Request for Admission No. 15.

**C.      Interrogatories and Requests for Production**

**1.      Request for Production Nos. 2, 3, 4, 11, 12, 15, 20, and 21**

Each of these requests seek "all documents that relate, refer, concern or pertain" to various subjects (Pl.'s Mtn. to Compel, Ex. 2). "Use of omnibus phrases such as 'pertain to' often makes [a discovery request] overly broad and unduly burdensome on its face. Such phrases often require the answering party to engage in mental gymnastics to determine what information may or may not be remotely responsive." Mackey v. IBP, Inc., 167 F.R.D. 186, 197-98 (D.Kan. 1996). In addition, similar requests for "any and all" documents have been denied as overly broad. Horizon Holdings, L.L.C., 209 F.R.D. at 215. It is simply impossible for PNM to identify all documents that "pertain" to a particular subject matter. When a party

9

makes overly broad requests, he runs the risk of having the request denied outright. Id. at 213. As Plaintiff in this case has refused to compromise or make reasonable requests for information, no further responses to any of these requests should be ordered.

         2.      **Interrogatory Nos. 4, 6, and 13 and Request for Production Nos. 15 and 20**

These interrogatories and requests seek information and documents related to all individuals with engineering degrees who were employed as of August 21, 2002, engineering and construction project manager positions that have become available since 2001; all employees hired since August 2002 who have an engineering degree; and all attempts to obtain re-employment by any employee impacted during the August 2002 reorganization (Pl.'s Mtn. to Compel at Exs. 2 and 3). PNM objected on the grounds of scope, relevance and invasion of privacy. However, in response, PNM provided a list of the positions that Plaintiff applied for, the name of the hiring manager, the name of the person hired, the resume of the individual hired, if anyone, and the job posting.

These interrogatories and requests are blatantly overbroad and burdensome. First, the requests for information and documents related to employees with engineering degrees are not even limited to those positions for which an engineering degree is required or encouraged. PNM may have employees who perform no engineering related duties, yet happen to have an engineering degree. Second, these requests assume that Plaintiff would be qualified for any position held by someone with an engineering degree, ignoring other job requirements and the incumbent's work experience. Third, these requests would require PNM to review the resume of every person hired since August 2002 to determine if anyone has an engineering degree, an unduly burdensome task that would result in no admissible evidence.

Moreover, information on people who were hired for jobs outside of Plaintiff's department, and positions that Plaintiff did not apply for, are not relevant. See Balderston v. Fairbanks Morse Engine, 328 F.3d 309, 320 (7th Cir. 2003) (when requesting discovery in an age discrimination case, the other employees' circumstances must be close enough to make comparison productive); see also James v. Newspaper Agency Corp., 591 F.2d 579, 582 (10th Cir. 1979) (plaintiff limited to discovery for her own department). With regard to his claim of retaliation in hiring after his impaction, the proper comparison group is the applicants Plaintiff was compared to in hiring decisions. In addition, in order to determine if retaliation occurred in the hiring for positions for which Plaintiff applied, Plaintiff need only compare his qualifications to that of the person hired. PNM provided the resumes of those hired for the positions for which Plaintiff applied, and therefore, Plaintiff has all the information necessary to allege discrimination.

Plaintiff also argues that "PNM claims that Korbin was not qualified for two of the project management and engineer positions . . ." because "the jobs required an electrical engineer degree and Korbin is a mechanical engineer" (Pl.'s Mtn. to Compel at 7). Plaintiff alleges that the legitimacy of this new job requirement can be tested only by determining who PNM actually considered for the position. (Id.) In fact, the legitimacy can best be tested with information regarding who was actually hired and whether that person had an engineering degree. Plaintiff has the resumes of those hired for positions for which he applied, and thus has all information necessary to test the legitimacy of PNM's defense.

With respect to positions that Plaintiff did not apply for, Plaintiff makes yet another false statement. Specifically, Plaintiff claims such information is "relevant to PNM's defense that it

11

had no project management work for Korbin to do and that it was too fat with design engineers."
(Id. at 8.)   PNM has never made such a statement.   PNM's management made the 2002
Downsizing decisions by studying each department individually and determining whether any
position in that department could be eliminated based on whether the functions of that position
were necessary, duplicative of other positions or could be consolidated or eliminated. Thus, the
proper category for comparison is, at most, Plaintiff's own department.   Marshall v.
Westinghouse Elec. Corp., 576 F.2d 588, 592 (5th Cir. 1978) (in determining the scope of
discovery in non-class action discrimination complaints, "the most natural focus is upon the
source of discrimination -- the employing unit or work unit.")   There has been no showing that
PNM compared Plaintiff to others outside of his department, hired any employees to perform
Plaintiff's duties or that Plaintiff was compared to other individuals hired for positions that
Plaintiff did not apply for.   As a result, Plaintiff is not entitled to discover information regarding
positions outside his own Department or those for which he did not apply.

Plaintiff next argues that "PNM is taking the position that Korbin was the least qualified
engineer . . . ."  (Pl.'s Mtn. to Compel at 8).  This statement is yet another example of Plaintiff
misleading the Court, as PNM has never made such an argument.  As stated in its answer to
Interrogatory No. 3, Plaintiff's position was eliminated because the primary job duty of his
position, process development, was being performed by another company, and the department's
other function, work order writing, was being fulfilled by other department employees.  (Pl.'s
Mtn. to Compel, Ex. 2 at 6-7.)  In addition, Plaintiff was not good at writing work orders, did not
like writing them, and even refused to write them (see Pl. Dep. 137:3-6).  PNM has never argued
that Korbin was the "least qualified engineer" in the Company, and therefore Plaintiff's

argument that he needs the names of all employees with engineering degrees is misplaced. Plaintiff was only compared to the other individuals in his department, not to the other engineers in the Company.  As a result, Plaintiff's request for information about all employees with engineering degrees is overbroad and greatly exceeds the needs of this case.

### 3.    Interrogatory No. 8

Interrogatory No. 8 is a perfect example of the unreasonable manner in which Plaintiff has conducted discovery in this case.  This interrogatory seeks a list of all lawsuits over the last thirty years in which claims were asserted against PNM or one of its employees for (1) breach of contract; (2) retaliatory or wrongful discharge; (3) employment discrimination; (4) retaliation; (5) 42 U.S.C. §§ 1981, 1981A, 1983 or 1985 claims; (6) Title VII claims; (7) ADEA claims; (8) FLSA claims; (9) EPA claims; (10) ERISA claims; (11) NMHRA claims; and (12) "any other statutory claim asserted based on employment termination/retaliation." (Pl.'s Mtn. to Compel at 8-9.)  PNM objected on grounds of scope, relevance, and invasion of privacy.  However, in an effort to compromise and provide potentially relevant information, PNM provided information regarding lawsuits that arose out of the 2002 Downsizing.

In his Motion to Compel, Plaintiff agreed to limit the interrogatory to age, ERISA and breach of contract claims.  However, Plaintiff is still requesting information regarding lawsuits filed over a thirty-year period.  Notably, Plaintiff fails to argue why he believes the information is relevant.  Plaintiff is not entitled to this information because it is irrelevant, overly broad, and unduly burdensome.

First, Plaintiff has not demonstrated that lawsuits filed by other employees at any time are relevant.  Allegations or complaints which are withdrawn, dismissed, settled, or otherwise

13

resolved without a determination have no tendency to prove the existence of anything, are irrelevant, and are not reasonably calculated to lead to the discovery of admissible evidence. Kinan v. City of Brockton, 876 F.2d 1029, 1034-35 (1st Cir. 1989). Plaintiff has provided no explanation of how lawsuits filed in the last thirty years could tend to show anything relevant to his impaction or could lead to admissible evidence.

Second, the interrogatory is overly broad as it is not restricted to the department where Plaintiff worked, the individuals involved in his impaction, the 2002 Downsizing, or even to reductions in force. Most notably, the time period for which Plaintiff seeks information is entirely unreasonable. Courts have disallowed such requests, finding that only a few years' worth of information is relevant to a claim of discrimination. Finch v. Hercules, 149 F.R.D. 60, 64-65 (D.Del. 1993) (refusing Plaintiff's request for six years' worth of information and allowing only two years' worth); James v. Newspaper Agency Corp., 591 F.2d 579, 582 (10th Cir. 1979) (four years prior to liability period reasonable); EEOC v. Kansas City Southern Railway, 195 F.R.D. 678, 679-680 (D.Kan. 2000) (limiting request for ten years of information and allowing discovery only for three years prior and one year after liability period); Glenn v. Williams, 209 F.R.D. 279, 282 (D.D.C. 2002) (ten years of information sought by plaintiff was an inordinate length of time, and judge found that three years was reasonable).

Third, the request is burdensome and problematic. It would require searching through innumerable documents that have no relation to the case at hand. Moreover, Plaintiff demands more than a list of lawsuits, as Request for Production No. 1 asks for every piece of paper that "relates, refers, concerns, or pertains" to such lawsuits. (Pl.'s Mtn. to Compel, Ex. 3 at 1.) This

14

request illustrates the Plaintiff's counsels' unreasonableness in their requests, and should be refused.

**4.** **Interrogatory Nos. 9 and 10 and Request for Production Nos. 2 and 3**

These requests ask for a list of all documents relied on in terminating Plaintiff's employment, "the factors that were applied and how they were applied in deciding upon the employees to be subject to the reorganization," and "all documents that relate, refer, concern, or pertain to the factors, and description of factors, . . . used by the decision makers that resulted in the RIF and termination of" employees (Pl.'s Mtn to Compel. Exs. 2 and 3). PNM objected on the basis of attorney-client privilege and work product, but produced non-privileged documents relied on in making the decision to impact employees, including Plaintiff, and described the decision-making process that led to the impactions. PNM has also provided a privilege log for all privileged documents. Plaintiff apparently believes that other documents were used in the decision to impact Plaintiff. However, PNM answered this interrogatory in full by identifying and producing non-privileged documents used in the decision, and therefore no further response is necessary.

Plaintiff alleges that PNM did not produce its affirmative action plan[5] (Pl.'s Mtn. to Compel at 12). The plan is not relevant to Plaintiff's claims, as it does not classify or otherwise refer to employees by age or any other factor relevant to Plaintiff's claims. Plaintiff also seeks board meeting notes or minutes although he has already been told that all relevant documents have been produced. PNM made a reasonable inquiry and determined that no such notes or

15

minutes exist. Therefore, PNM has responded fully to this request. and no further production is necessary. (Ex. B.)

### 5.     Interrogatory No. 14 and Request for Production No. 10

Interrogatory No. 14 asks for a list of all documents that PNM received or sent to the Department of Labor that relate to the pension plan (Pl.'s Mtn. to Compel. Ex. 2 at 18. Ex. 3 at 6). Request No. 10 seeks all documents related to the status of the pension plan since 1996. In its Answer to Interrogatory No. 14, PNM referred Plaintiff to its response to Request No. 10. which provided the Summary Annual reports, Annual Returns. and Financial Statements and Supplemental Schedules for 1999 to 2003. These documents are the same documents used by the Department of Labor to analyze the status of the pension plan, and thus, are more than adequate to allow Plaintiff to analyze the status of the pension plan. In addition, as stated below. PNM provided Plaintiff with numerous actuarial valuation reports prepared by Watson Wyatt. Since Plaintiff's Motion was filed, PNM has also produced three internal memos regarding the pension plan's funding levels in 2002, the year of the reorganization.

Plaintiff still seeks additional "documents that relate to the funding levels. and performance of the pension assets." Plaintiff however, fails to say why more information is needed. The documents PNM has already produced, namely its annual reports, clearly show the plan's financial condition during the time period relevant to this lawsuit. including data on plan assets and the changes in assets for each year between 1999 and 2003. Plaintiff has failed to demonstrate that these documents do not contain sufficient information or that they do not

---

[5] Plaintiff also complains that PNM did not produce its EEO profile, which is referred to in the reorganization guidelines PNM produced. PNM has since produced the EEO profile, which is an EEO analysis of the effect of the reorganization on demographic groups.

accurately show the plan's financial health.  In addition, the documents produced reflect the funding level of the pension plan during the relevant time period.  Therefore, Plaintiff's request should be denied.

**6.**     **Request for Production No. 4**

This request seeks all documents related to the organizational structure of PNM for several time periods from January 2001 until the present.  Again, this request is overly broad, but in an attempt to avoid a discovery dispute, PNM provided organization charts of the System Reliability organization for the periods before and after Plaintiff's impaction.  Plaintiff claims he needs more organizational information to "belie PNM's claim that there was no project management work for Korbin to perform and that PNM was fat with design engineers."  PNM has never made such a claim.  Plaintiff's position was eliminated because his function, process development, was not needed, and he had no demonstrated skill as, or desire to be, a work order writer in the Construction Department.  Moreover, Plaintiff has not explained how organizational charts for time periods other than August 2002 could possibly show whether project management work was available at the time of the reorganization.  Therefore, PNM's objection should be sustained.

**7.**     **Request for Production Nos. 11 and 16**

Request No. 11 seeks "all documents that relate, refer, concern or pertain" to the anticipated and actual impact of the reorganization on employee demographic groups, and Request No. 16 seeks all "employee demographic information" for seven time periods before and after the reorganization.  Notwithstanding the vague and grossly overbroad nature of these requests, PNM has produced the only document that relates to the impact of the reorganization

on employee demographic groups, namely Vic Silva's EEO Analysis. Demographic information for other time periods is not relevant to whether Plaintiff was discriminated against during this reorganization. Therefore, Plaintiff has no need for any additional demographic information.

### 8.    Request for Production No. 12

This request seeks "all documents that relate, refer, concern or pertain" to any reduction in forces, reorganization, or employee layoffs during the last 20 years. The temporal scope of this request is vastly overbroad. See Finch v. Hercules, 149 F.R.D. 60, 64-65 (D.Del. 1993) (refusing plaintiff's request for six years' worth of information and allowing only two years' worth); James v. Newspaper Agency Corp., 591 F.2d 579, 582 (10th Cir. 1979) (four years prior to liability period reasonable); EEOC v. Kansas City Southern Railway, 195 F.R.D. 678, 679-680 (D.Kan. 2000) (allowing discovery for three years prior and one year after liability period). In addition, information pertaining to previous reorganizations is in no way related to the 2002 Downsizing, and Plaintiff has not demonstrated otherwise. As a result, Plaintiff is not entitled to these documents.

### 9.    Request for Production No. 13

This request seeks "all Watson Wyatt documents" from January 2000 to the present (Pl.'s Mtn. to Compel, Ex. 3 at 8-9). PNM objected and recently, in an attempt to resolve this dispute, provided the following documents:

- Watson Wyatt - Actuarial Valuation Report:  Employees' Retirement Plan; Pension Contribution 01/01/04
- Watson Wyatt - Actuarial Valuation Report:  Employees' Retirement Plan; Pension Contribution 01/01/03
- Watson Wyatt - Actuarial Valuation Report:  Employees' Retirement Plan; Pension Contribution 01/01/02
- Watson Wyatt - Actuarial Valuation Report:  Employees' Retirement Plan; Pension Contribution 01/01/01

18

- Watson Wyatt - Actuarial Valuation Report: Employees' Retirement Plan: Actuarial valuation to determine contributions for plan year 01/01/00
- Watson Wyatt - Actuarial Valuation Report: Employees' Retirement Plan: Revised SFAS 87 Disclosure 2003
- Watson Wyatt - Actuarial Valuation Report: Employees' Retirement Plan; Pension Expenses & Disclosure 01/01/03
- Watson Wyatt - Actuarial Valuation Report: Employees' Retirement Plan; Disclosure 12/31/01
- Watson Wyatt - Actuarial Valuation Report: Employees' Retirement Plan; Financial Statement Disclosures for FASB statement 87 for year ended 12/31/00 & Valuation for purpose of FASB Statement 87 for fiscal years beginning 01/01/01
- Watson Wyatt - Actuarial Valuation Report: Employees' Retirement Plan; Financial Statement Disclosures for FASB Statement 87 for year ended 12/31/99 & Valuation for purpose of FASB Statement 87 for fiscal years beginning 01/01/00

Because this requests seeks *all* Watson Wyatt documents, it is on its face overbroad.  See Horizon Holdings, L.L.C., 209 F.R.D. at 215.  In addition, Plaintiff has failed to demonstrate why these documents are not adequate to evaluate the condition of the pension plan, and his request for more information should therefore be denied.

### 10.    Request for Production No. 14

Request No. 14 is an example of a fishing expedition.  This request seeks the personnel files for Plaintiff, Wayne Sowell and all individuals who were hired as engineers from August 1, 2002 to the present (Pl.'s Mtn. to Compel, Ex. 3 at 10).  PNM provided Plaintiff with Plaintiff's personnel file, desk files of Wayne Sowell, Toby Holden and Crista Belt.  PNM also produced for each position that Plaintiff applied for, the resume of the individual hired, if anyone, and the job posting.

Plaintiff argues that the personnel file for Mr. Sowell is relevant with respect to his history with employees he supervises.  Plaintiff cites Jones v. Hamilton County Sheriff's Dept., 2003 WL 21383332 (S.D. Ind. 2003), an unpublished decision, for the proposition that he is

entitled to the file. Plaintiff's reliance on this unpublished decision fails for a number of reasons. First, the Jones case is distinguishable because it provided for discovery of personnel files of similarly situated employees and the supervisors who were named defendants. Mr. Sowell is neither similarly situated nor a named defendant. Second, the Jones case is of little value because it is an unpublished decision, from another circuit and, in coming to its conclusion, the Jones court relied on other unpublished decisions. Third, the reality is that both Federal and State courts have frequently recognized that the United States Constitution and the New Mexico Constitution protect an individual's right of privacy or guaranty certain zones of privacy. Whalen v. Roe, 429 U.S. 589, 599-600 (1977); Blount v. TD Publishing Corp., 77 N.M. 384, 387, 423 P.2d 421, 423 (1966). See also Burka v. New York City Transit Auth., 110 F.R.D. 660, 665 (S.D.N.Y. 1986) (citing Inmates of Unit 14 v. Rebideau, 102 F.R.D. 122, 126 (N.D.N.Y. 1984) ("[A] non-party having no stake in the litigation retains a greater expectation of privacy" than a litigant). At least two different interests come within these protected zones of privacy: "one is the individual interests in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen, 429 U.S. at 599-600 (footnotes omitted). The first one would be at issue here. This interest has been defined as "constitutionally protected privacy rights in matters of personal life." Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 457 (1977), Blount, 77 N.M. at 387, 423 P.2d at 423. Parties expect intrusion by instituting a lawsuit; non-parties do not. Plaintiff should not be allowed to conduct a fishing expedition into private, confidential personnel files, which were never used in deciding to terminate him. As one Federal court has opined, an employee's privacy interest in maintaining their personnel files as confidential, outweighs the need for plaintiff to, "roam in

Case 6:03-cv-01167-MV-ACT   Document 50   Filed 10/21/04   Page 21 of 43

shadow zones of relevancy and to explore matter which does not presently appear germane on the theory that it might conceivably become so." Blum v. Schlegel, 150 F.R.D. 38, 39 (W.D.N.Y. 1993) (citation omitted).

Plaintiff also argues that the documentation concerning Plaintiff's "performance issues are not documented in the ordinary course of PNM's business" and that Mr. Sowell's "personnel file may contain reprimands or other discussions about Sowell's supervision of Korbin that may be relevant to accuracy and reliability of Sowell's assessment . . . ." (Pl.'s Mtn. to Compel, at 14). These statements are not supported by any evidence and are untrue. First, Plaintiff's performance issues are well documented in recent testimony, notes, e-mails and performance evaluations that have been produced to Plaintiff. Second, PNM counsel has reviewed Mr. Sowell's personnel file and it does not contain "reprimands or other discussions about Sowell's supervision of Korbin."

Plaintiff also argues that "Korbin has reason to believe that Sowell had problems in supervising employees in his prior PNM position which resulted in his demotion/discipline." (Id.) Again, this statement is not supported by any evidence. The position Plaintiff refers to is Mr. Sowell's former position as Director, Regional Electric Operations. In 1999, Mr. Sowell was replaced and transferred to the Director, Competitive Analysis. Mr. Sowell has testified that he was not disciplined as Plaintiff claims, and he was not demoted, but rather transferred from one director position to another director position. Additionally, counsel for PNM has reviewed the file and there is no evidence to support Plaintiff's allegations. Plaintiff should not be permitted to peruse Mr. Sowell's personnel file when it does not contain any of the documents Plaintiff alleges are relevant to this case.

21

11.    **Request for Production Nos. 17, 18 and 19**

These requests seek all versions of the employee handbooks and other employee policies from 1977 to the present, all documents related to the interviewing and hiring of employees from 1977 to the present, and all documents that "would or could" have informed employees in 1977 that employment with PNM was at will (Pl.'s Mtn. to Compel at Ex. 3)  PNM objected, but produced relevant portions of the personnel policies in effect at the time of the 2002 Downsizing. PNM responded that all known documents related to the hiring of Plaintiff, if they exist, are part of his personnel file, which was produced.  Information regarding other employees' hiring is not relevant to Plaintiff's claims and therefore need not be produced.

Furthermore, the temporal scope of Plaintiff's request (almost thirty years worth of information) is unreasonable on its face and should be denied.  In addition, by asking for documents that "would or could" say something, Plaintiff requires PNM to do mental gymnastics to determine what documents Plaintiff seeks.  See Mackey, 167 F.R.D. at 198.  PNM has produced all relevant documents, and as a result, further responses to these requests should be refused.

12.    **Request for Production No. 21**

Request No. 21 asks for documents concerning consultants, workers, or independent contractors who performed engineering or construction management work since 2002 (Pl.'s Mtn. to Compel, Ex. 3 at 18-19).  As an initial matter, it should be noted that Plaintiff did not address his objections to PNM's response to this request in his good faith letter.  Thus, Plaintiff has waived his right to contest PNM's objections. Fed. R. Civ. P. 37.  In addition, Plaintiff has made no showing that these documents would lead to evidence showing discrimination, retaliation, or

22

breach of contract, Plaintiff claims he needs to examine the outsourcing of Korbin's process development work, when, in fact, that work was outsourced and completed several months before his impaction. The documents sought are irrelevant to Plaintiff's claims, and this request should be denied.

      13.    **Request for Production No. 25**

Request for Production No. 25 is another attempt by Plaintiff to invade the privacy of others. This request seeks documents that relate to PNM employee Thomas Golo and his employment and citizenship status. This request also seeks Mr. Golo's employment file (Pl.'s Mtn. to Compel, Ex. 3 at 19). PNM is acting as Mr. Golo's sponsor for his application for citizenship. As part of the application process, PNM did labor market tests, which consisted of posting the position for which Mr. Golo was hired to determine if any qualified applicants are U.S. citizens. Plaintiff submitted his resume in response to the job posting, although the posting clearly states that an electrical engineering degree is required for the position. Plaintiff does not have an electrical engineering degree or other qualifications for the position, and therefore is not qualified for this position. Because this job posting is not related to his claims, Plaintiff must be fishing for information to support another claim, which is clearly improper. Fed. R. Civ. P. 26(b)(1) advisory committee notes to the 2000 amendment (parties "have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.") Therefore, PNM should not have to produce documents in response to this request.

III.   **Conclusion**

Plaintiff has demonstrated no basis for his claim that PNM should be required to comply with his overbroad and burdensome discovery requests. Additionally, PNM has legitimate and well-founded grounds for refusing to produce the information Plaintiff seeks.

WHEREFORE, PNM requests that this Court deny Plaintiff's Motion to Compel, and for such other relief as this Court deems appropriate.

Respectfully submitted,

KELEHER & McLEOD, P.A.

By _Christi M. Hylott for_

Robert C. Conklin
John K. Ziegler
PO Box AA
Albuquerque, NM 87103
(505)346-4646
*Attorneys for Defendant*
*Public Service Company of New Mexico*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of October, 2004, two copies of the foregoing RESPONSE were hand-delivered to:

Geoffrey D. Rieder
Wayne R. Suggett
Maestas, Rieder & Suggett, PC
Albuquerque Plaza
201 Third St NW, Ste 1700
Albuquerque, NM 87102
*Attorneys for Plaintiff*

_Christi M. Hylott for_

John K. Ziegler

NNF0320

24

## MAESTAS, RIEDER & SUGGETT, P.C.

**Attorneys and Counselors**
**Albuquerque Plaza**
**201 Third Street N.W. Suite 1700**
**Post Office Box 1670**
**Albuquerque, New Mexico 87103-1670**

Telephone (505) 767-9801                                                    Wayne R. Suggett
Facsimile (505) 767-9807                                        e-mail: wayne_suggett@mrs-law.com

August 30, 2004

## *VIA HAND DELIVERY*

John K. Ziegler, Esq.
Keleher & McLeod
201 Third Street, N.W., 12th Floor
Albuquerque, NM 87102

Re:   ***Thaddeus M. Korbin v. Public Service Company of New Mexico***
***CIV No.*** 03-1167

Dear John:

What follows is my opening attempt to meet and confer on PNM's Responses to Plaintiff's First Request for Admissions, and First and Second Request for Production and Interrogatories. If there is a chance to work out some of our differences on one or more of the categories that follow, please let me know so that we can set up a time to meet.

**Request for Admissions and Interrogatory No. 2**

Request for Admission No. 2. While PNM admits this Request, they also include extraneous information that is not only incomplete but it is not relevant to either admitting or denying the Request for Admission. This is clear from the fact that no information is provided concerning this extraneous matter in Interrogatory No. 2 that would be required if PNM was doing anything other than unqualified admitting the Request for Admission. Therefore, I request that you remove this and submit new Requests for Admissions simply omitting this. Alternatively, at a minimum, if you are going to keep the extraneous matters then you should properly answer Interrogatory No. 2 and provide the facts and witnesses that support this extraneous statement.

Request for Admission No. 4. Sought whether PNM required employees to agree not to seek employment as part of settlement negotiations resulting from claims of discrimination or lawsuits. PNM denied that this has occurred on every case and yet, in Interrogatory No. 2, there is not a single reference to a particular matter where that was not a required term of settlement.

**EXHIBIT**

A

John K. Ziegler, Esq.
August 30, 2004
Page 2

Request for Admission Nos. 6 and 7. PNM states in conclusory fashion that it has made reasonable inquiry and can not admit or deny whether it instructed its hiring officials in 1977 or prior to then to instruct employees that their employment was at-will. PNM supplies the same boiler-plate response in determining whether there are written materials. It seems a stretch for PNM to claim that it can not admit or deny whether it has written materials that it either provided to prospective or newly hired employees or its hiring officials concerning the nature of the employment relationship. Obviously PNM has a substantial company history that it maintains and I find it suspicious that this Request can not be responded to. Regardless, simply stating that PNM cannot admit or deny does not satisfy Rule36's inquiry requirement. Please admit or deny or provide the factual support for PNM's inquiry and why it cannot admit or deny.

Request for Admission No. 10. Again, PNM conclusorily states that it can not admit or deny this information. I note that in Interrogatory No. 1, that requested individuals who provided information or who you requested information from, no one contacted anyone with the Kelleher law firm or with PNM's legal department. I find it hard to believe that as long as Keleher McLeod has represented PNM and the fact that it has a full-fledged legal department that there is a state of "amnesia" concerning cases involving challenging PNM's termination decisions including findings related to whether PNM is an at-will or for cause employer. I note that you do not cite one single case where juries or the Court ruled in favor of PNM that it is an at-will employer and yet you claim that this has occurred on a number of occasions.

## Interrogatories.

Interrogatory No. 1. This Interrogatory requested that you list the individuals who helped provide information or who you requested information from concerning the First Set of Interrogatories and Request for Production. You state that you are not providing the answers for the Kelcher and McLeod attorneys involved in the response or the internal PNM attorneys. As to the Keleher McLeod individuals, I would request that you provide the names of attorneys requested for information in regard to the question concerning prior litigation on the implied contract claim. As to PNM's internal counsel, I request that you provide the attorneys for PNM who helped respond or who you requested information from as whether they are entitled to any attorney-client protection in light of their "business" function, is less than clear.

Interrogatory No. 2. While this is largely discussed above, the Interrogatory requests that you list the documents that support the denials. Again, you have not listed any documents, cases, names, or other information as requested in the Interrogatory.

Interrogatory No. 4. PNM objected to providing all engineering and project manager positions that have become available since August 1, 2002. Instead, PNM only listed the positions

John K. Ziegler, Esq.
August 30, 2004
Page 3

that Plaintiff applied for. I would request that PNM list all positions that have become available since January 1, 2002 and whether the position has been filled or not and by who and at what salary.

Interrogatory No. 6.  This Interrogatory sought all individuals with engineer degrees that PNM employed as of August 21, 2002 and PNM objected to providing this information. Obviously this is relevant as it is clear from the documents produced to date that decisions were made concerning what engineers to retain and what engineers to transfer, promote, and demote. Therefore, I need the information concerning all engineers within the company so that I can evaluate PNM's so called "skill set assessment" analysis and the reason Korbin was terminated.

Interrogatory No. 7.  This Interrogatory sought all employees who have been terminated due to a RIF or reorganization since 1995.  PNM refused to provide this information other than in relationship to the August 22, 2002 RIF. This information is relevant to determine whether PNM has been using the RIF or reorganization process for the purpose of eliminating longer term, older employees. It is thus relevant to both Korbin's age, ERISA-based claims, as well as part of his implied contract claim. Further, while you now claim that only 72 employees were terminated, initially PNM claimed that 85 employees were terminated and your EEOC response referenced 82 and the document originally provided to Korbin references 79. Please provide the information concerning the missing 13 employees.

Interrogatory No. 8.  This Interrogatory sought all lawsuits PNM has been a party to in the last 30 years related to employment relationships or employment termination. PNM objected to providing this information except in relation to the August 22, 2002 RIF. This information is relevant again to determine whether there are similar claims that have been asserted and I am at a loss at how this information is "unduly burdensome" and PNM has not established that providing this information is in fact "unduly burdensome." I am open to discussing whether 30 years is too broad, however, certainly information other than the August 22, 2002 RIF is relevant and not too broad.

Interrogatory No. 9.  PNM asserted an attorney-client and work product privilege concerning the documents that were reviewed, relied on, or considered to terminate Korbin's employment. I fail to see how any document that was reviewed, relied on, or considered in impacting Korbin can be protected by work-product privilege. Attorney-client privilege also seems to be stretch, however, regardless of any work-product or attorney-client claim, the documents themselves should be listed and an appropriate privilege log should be supplied.

In your EEOC response, you cite statistics and claim the RIF was not statistically significant. I request the documents and information regarding these statements.

John K. Ziegler, Esq.
August 30, 2004
Page 4

Additionally, you state that there are notes of meetings and performance evaluations that apparently were reviewed or relied on in making the decision but you do not identify the notes or performance reviews that went into the decision making process as required by Fed. R. Civ. P. 33 (d). I request that you specifically identify those records consistent with the requirements of the Rule.

Interrogatory No. 10. This Interrogatory sought the separate databases and files concerning employee demographic information and who keeps those databases and files and where. You state that PNM uses the PeopleSoft® but you do not list where the PeopleSoft® program can be accessed and who is responsible for keeping the employee demographic information. I request that you amend your response to this Interrogatory to provide this information.

Interrogatory No. 13. Individuals who have been hired since August 22, 2002 that have an engineering degree is relevant as Korbin's primary skill set is that of a degreed professional engineer. PNM's claim that it needed to reorganize and that Korbin did not have the appropriate skill set for the new direction the company was taking, makes what other engineers who were hired since Korbin and what their skill set is relevant to determine the veracity or pretext of this claim. It is also relevant to whether PNM has retaliated against Korbin for filing an EEOC charge and subsequent lawsuit in not considering Korbin for positions he was qualified for.

Interrogatory No. 14. PNM objects to providing documents between the United States government and PNM related to the employee pension plan from January 1, 1997 to the present. As a beneficiary in the plan, Ted Korbin has a right to inspect all such records regardless of litigation and obviously these records may be relevant to the various claims Korbin has asserted, and PNM's denials, in relation to his ERISA claim.

**Request for Production.**

Request for Production No. 2. This Request sought all documents that related to the factors and description of factors including but not limited to skill set assessments used by the decision makers in the RIF and termination of Korbin's employment. PNM objects and appears to limit the documents that relate to the decision to reorganize and the impaction of Plaintiff's position. If there are documents related to or that refer or concern the factors and description of factors that were used by the decision makers then I request that those documents be produced.

Request for Production No. 3. This Request sought the factors including the skill set assessments used by the decision makers concerning all the employees that were RIF'd. PNM did not produce this information and it is relevant to determine whether the process as carried out is consistent from employee to employee, department to department, including but not limited to Korbin. I request that the skill set assessments for the other departments that resulted in the

John K. Ziegler, Esq.
August 30, 2004
Page 5

termination of the other employees be produced to determine whether there are inconsistencies in the treatment of Korbin.

Request for Production No. 4. This Request sought PNM's reorganization charts from January 1, 2001 and specifically included the periods just before, at the time of, and after the RIF. PNM rejected this information as being irrelevant and burdensome. I fail to see how this information is burdensome to produce what should amount to a handful of organizational charts over a period of less than two years. It is obviously relevant as one of the reasons raised by PNM is that reorganization had been set up for some time in a regulation/deregulation organization chart. I want to review the veracity of these statements.

Request for Production Nos. 5, 6 and 16. These Requests are the subject of prior meet and confers and I will not readdress them here.

Request for Production No. 9. This Request sought the documents related to the termination of the other employees as part of the August 22, 2002 RIF. It appears that with the exception of a couple employees, this has not been produced. I request this information as I stated above in response to the similar Interrogatory whether the process carried out for Ted Korbin is similar to the process carried out with the other employees is relevant to determining the motivations and legitimacy of PNM's actions.

Request for Production No. 10. This Request sought documents related to the status of the Employer Retirement Pension Fund from January 1, 1996 though the present. Your production did not produce any statements, memos, or other documents related to concerns by stockholders or issues raised internally by PNM concerning the Pension Fund at any time. Obviously, this lawsuit is about PNM's motivation to manufacture a RIF as a ruse for getting rid of long-term, elder employees, particularly those accumulating pension benefits and approaching the magical 30 years of service. Clearly, internal documents related to issues about the status of the Pension Fund, especially its poor investments in 2000 and 2001 and related to the substantial monies PNM had to contribute in cash and stock to the Plan is relevant.

Request for Production No. 11. This Request sought documents related to impact-related statistic studies or other documents created as a result of the proposed July/August reorganization. This information is clearly relevant in determining whether PNM considered the effect the reorganization would have on particular work groups, in particular workers over 40, workers approaching 30 years of service, and workers otherwise accumulating pension benefits. This information is relevant as it goes to PNM's motivation including but not limited to its true intent.

Further, you cite to statistics in your EEOC response yet this information has not been produced.

John K. Ziegler, Esq.
August 30, 2004
Page 6

Request for Production No. 12. This document requested information concerning voluntary RIF programs and skill set assessments related to reduction of force reorganization or employee layoffs during the last 20 years. My understanding is that the first significant, if not first, employee layoff at PNM occurred sometime in the mid to late-80s. There have been a number of reorganizations or RIFs since then and this information is relevant in response to Korbin's claim that while he had an implied contract to only be fired for cause, he also had an implied contract to rely on that any layoff would be conducted in a particular manner. The only way to compare whether the current RIF was done inconsistently and to the disadvantage of older workers and workers accumulating pension benefits is to compare PNM's actions of the August 2002 RIF with prior RIFs. Therefore that information is relevant and should be produced. Also, how PNM carried out prior RIFs (believed to be different from this one) is also relevant to PNM's motive.

Request for Production No. 13. This Request sought Watson Wyatt documents from January 1, 2000 through present. My understanding is that Watson Wyatt is PNM's actuary company and has done numerous studies and statistical data concerning PNM pension and retirement issues. In fact, I have an Alice Cobb document related to older workers where the source was Watson Wyatt. Obviously documents from Watson Wyatt may show that PNM in fact was concentrating or at least concerned with the growing number of workers in their late-40s and early to mid-50s who were fast approaching 30 years of service and thus entitled to full early retirement pensions.

Request for Production No. 14. The personnel file for Wayne Sowell as well as other engineers and project managers that were employed at the time of the RIF is relevant for a number of reasons. There is information that Wayne Sowell was either demoted or transferred from Santa Fe in part because of problems he was having with supervising employees in PNM's Santa Fe office. One of the issues PNM is apparently going to take in this lawsuit is that Ted Korbin was not a very good Work Order writer and that is apparently is going to come largely from the mouth of Wayne Sowell. Wayne Sowell's history with employees he supervises is therefore relevant to this issue especially in light of the fact that Ted Korbin never had any problems with his prior supervisors in his 20 plus years of employment with PNM.

The personnel files of the other engineers is relevant especially in relationship to the skill set assessments as the skill set assessment performed by Wayne Sowell and Toby Holden are very vague in relationship to the employees that were retained. Most of which simply say "good performer." Obviously, to determine that this is just the manufactured skewing of the results can best be gleaned from determining whether the performance reviews and other information in the employees' files belie the vague and general descriptions contained in the skill set assessments produced.

Request for Production No. 15. This Request for Production sought the interviewing and offering of employment in filling engineer and construction manager related positions from January

John K. Ziegler, Esq.
August 30, 2004
Page 7

1, 2001 through the present. This was objected to in what was agreed to be produced were
apparently the job postings that Korbin had applied for and the person that was hired since August
22, 2002. To begin with, in my review of Request for Production No. 15, all those have not been
produced. In addition, Korbin applied for a position prior to August 22, 2002 and there were other
positions that were filled through the RIF that, while Korbin did not apply for them, he should have
been considered for as part of the RIF process. In addition, jobs related to engineering and project
management are also relevant to PNM's claim that there was no project management work available
and no open positions to transfer Korbin into. I request those job fillings.

I also want the information concerning engineers and project managers hired since January 1,
2001 since PNM is taking the position that there was no project management work to be performed
by Ted Korbin after approximately mid-2001 and this is likely to be belied by the project
management work that was advertised for and filled since that time. I also need the applications for
the individuals who were actually considered for these positions. This is relevant because if PNM
claims Korbin did not have a particular skill set, and thus was not considered for a position, this may
be belied by the fact PNM considered an applicant (although not hired or who did not accept the job)
who also lacked the same skill.

Request for Production No. 17. You object to producing the Employee Handbooks that were
in use from the time of Ted Korbin's hiring until his termination. This is legally insufficient as rights
that were created in between his hiring and his termination cannot be taken away simply through
PNM's unilateral modification of the most recent version of the Employee Handbook. Therefore, I
request all Employee Handbooks and I have no doubt that PNM has maintained copies of those for
the period of time in question.

Request for Production No. 18. This Request sought all documents created by PNM related
to interviewing and hiring employees from January 1, 1997 through the present. This is specifically
directed at documents to be used by interviewing and hiring officials on what can be said and what
can not be said to perspective employees or to employees at the time of their hire. Those documents
in fact do exist and I request that they be produced.

Request for Production No. 19. This Request sought documents that would have informed
potential employees or new hires that they were considered to be at-will employees in 1977. The fact
that New Mexico is an at-will State does not alter the fact that either these documents exist or they
do not. If they exist, I request that they be produced. If they do not exist, than PNM should so state.

Request for Production No. 20. This Request sought records for the RIF employees,
including Korbin, who sought employment with PNM after the August 2002 RIF. This is relevant as
acknowledged by PNM the only employees who have been hired since the RIF were employees who

John K. Ziegler, Esq.
August 30, 2004
Page 8

did not file charges of discrimination and subsequent lawsuits against PNM. This is relevant to Korbin's retaliation claims and I request that these records be produced.

Request for Production No. 22. PNM raises a multitude of objections to this Request and then states the EEOC file has been produced. That does not address the question. Are there additional records that PNM is withholding related to Korbin's discrimination claims or the August 22, 2002 RIF? For example, it appears PNM has recorded statements concerning Korbin's meetings with Christa Belt and Wayne Sowell in the Spring and early Summer 2002. If so, then I request that PNM produce a privilege log for these records.

Request for Production No. 24. This Request sought documents concerning Plaintiff's Second Set of Interrogatories that relate to Interrogatory No. 14 concerning the Department of Labor documentation. If PNM is withholding any documents on the basis of any privilege, or work-product, I request that PNM provide a privilege log. Again, consistent with Interrogatory No. 14, all documentation related to Interrogatory No. 14 is related to Korbin's ERISA claim and I request that that they be produced. For example, documents related to under funding of the Pension Plan or other concerns the Department of Labor has with the Pension Fund is relevant to the claims in this lawsuit.

Request for Production No. 25. You stated that you were going to produce documents related to Thomas Gallo and those have not been produced. I would also again request Thomas Gallos employment file as it appears that Korbin was qualified for the position Mr. Gallo held and that this is relevant to PNM's motivation as my understanding is that PNM would have had to represent to the immigration service that there was no one else qualified for the position that Mr. Gallo had. Therefore, documents that PNM sent to the U.S. Government related to the pool of employees qualified for the position Gallo holds is relevant to this lawsuit.

**Review of Original Records.**

Finally, regardless of our ability to work out any of the above-referenced issues, I would like time this next week to come by and review the original records that were produced. In particular, many of the skill set assessments have yellow notes or "sticky" notes that are covering up some of the writing including signatures on the original skill set assessments. There is also different writing on many of the records, the copies do not appropriately show the color coordinated graphs that were produced and therefore I would like to see all the original records to help me understand the evolution of the reorganization plan.

Again, while this does not detail all the specific shortcomings of PNM's discovery, if there is room to discuss, or if you need more information from me, please call me or make arrangements for me to come over to your office so that we can discuss in more detail.

John K. Ziegler, Esq.
August 30, 2004
Page 9

Very truly yours,

Wayne R. Suggett

WRS/mt
ZIEGLER 20040827

 

**KELEHER & McLEOD**
*A PROFESSIONAL ASSOCIATION*

John K. Ziegler
Direct Dial: (505) 346-9184
E-Mail: jkz@keleher-law.com

September 10, 2004

**HAND DELIVERED**

Wayne R. Suggett, Esq.
Maestas, Rieder & Suggett, P.C.
201 Third St. NW, Ste. 1700
Albuquerque, NM 87102

Re:    Korbin v. PNM

Dear Mr. Suggett:

This letter is in response to your letter dated August 30, 2004. As explained in detail below, we are providing, or will provide, some of the information and documents you requested. We may agree to provide additional information and/or documents if you explain with additional specificity, the relevance of the information sought to Plaintiff's claims. However, there appears to be some information and documents, which we cannot agree to provide. We incorporate by reference all objections made in Defendant Public Service Company of New Mexico's Objections and Responses to Plaintiff's First and Second Set of Interrogatories, the Objections and Responses to the First and Second Set of Request for Production and the Objections and Responses to the Request for Admissions. Any and all information and documents are provided without waiving the objections stated therein.

With regard to your request for a privilege log, as discussed below, we will review our records for such relevant documents and we will agree to provide such a log with the understanding that the log will not identify documents or information in Keleher & McLeod files, nor will it identify communications between Keleher & McLeod and PNM. We would hope that you agree that these documents and this information are clearly privileged. Please let me know by September 14, 2004 if you will accept such a log without objection.

**Request for Admission No. 2.**

This Request asks PNM to admit that only the employees impacted by the reorganization that have been subsequently rehired were employees who did not file discrimination claims against PNM. In your letter, you ask that we remove part of the response, or provide the information to support the

W. A. Keleher (1886-1972)
A.H. McLeod (1890-1976)

**Mailing Address**
PO Box AA
Albuquerque NM 87103

**Main Phone**
505-346-4646

**Street Address**
Albuquerque Plaza
201 Third NW, 12th floor
Albuquerque NM 87102
Fax: 505-346-1370

414 Silver SW, 12th floor
Albuquerque NM 87102
Fax: 505-346 1345



**EXHIBIT**
B

September 10, 2004
Page 2

response. We will agree to amend the Answer to Interrogatory No. 2 to provide the names and ages of the impacted employees who have been rehired.

**Request for Admission No. 4.**

This Request asks PNM to admit that former employees who have filed discrimination suits against PNM have been "required to sign agreements that contain a provision that basically states that the former employee agrees not to seek reemployment with PNM." In your letter, you assert that PNM did not provide in the Answer to Interrogatory No. 2, information to support its response. We stand by our objections. We fail to see how negotiated settlement agreements in other lawsuits, in any way relate to Plaintiff's claims. Moreover, it should be noted that it would probably be impossible to provide every instance of such agreements as the Request is not limited in time frame, and thus, it would require PNM to review records over its entire existence.

**Request for Admissions Nos. 6 and 7.**

Request No. 6 asks PNM to admit that it did not instruct hiring or interviewing employees in, or prior to 1977 to inform employees or prospective employees that their employment with PNM was at-will. Request No. 7 asks PNM to admit that prior to 1985 PNM did not have any written statement or materials that were provided to employees or perspective employees stating that employment with PNM was at-will. Incredibly, you cannot understand why PNM cannot admit or deny these requests, which seek information on PNM practices and documents over more than a thirty year period. Your request would essentially require us to talk with every PNM employee involved in the hiring process prior to 1977 and look at every document created prior to 1985 in order to conclusively answer it. Obviously that is not reasonable, possible or required under the Rules of Civil Procedure. In addition, it does not take into account that many of the records for this time period no longer exist or are not readily available. Accordingly, we stand by our objections.

In addition, you argue in your letter that PNM's statement that it cannot admit or deny, and its explanation why, does not satisfy Rule 36's requirement. However, Rule 36 clearly states that if the party cannot admit or deny, it shall set forth in detail the reasons why the answering party cannot truthfully admit or deny the matter. We clearly stated in our response why it cannot admit or deny the request, and thus, the response is sufficient.

**Request for Admission No. 10.**

This Request asks PNM to admit that there have been findings that PNM's employee handbook and other employee policies and procedures have created an implied contract of employment that termination could only be for just cause. In your letter, you complain that in the Answer to Interrogatory No. 1, no one from Keleher or PNM's legal department is listed as having provided information for the discovery responses. You sarcastically claim that there has been "amnesia" concerning cases involving whether PNM is an at-will or for cause employer.

September 10, 2004
Page 3

Interrogatory No. 1 clearly states that it is seeking the names of people that provided information, with the exception of "your lawyers or their staff members". The Interrogatories were submitted to PNM, and PNM's in-house attorneys, their staff and Keleher and its staff are indeed covered by the exception in your own interrogatory.

You also complain in your letter that no cases were cited. Based on our objections, we do not believe that we need to cite any cases. However, in the interest of attempting to resolve this dispute, we will agree to amend the answer to Interrogatory No. 2, to provide a list of <u>some</u> of the cases where the court has ruled in favor of PNM that it is an at-will employer.

**Interrogatory No. 1.**

This Interrogatory asks PNM to list the individuals who helped to provide information in answering the discovery responses related to prior litigation or the implied contract claim. As discussed above, this Interrogatory specifically excluded PNM lawyers and their staff members. Thus, our answer is sufficient and we will not provide the names of attorneys, or their staff. Additionally, we will not provide the names of PNM's internal attorneys as the information they provided is clearly attorney-client privileged.

**Interrogatory No. 2.**

Your complaints about this Answer are discussed above.

**Interrogatory No. 4.**

This Interrogatory seeks a list of all engineering and construction project manager positions that have become available since August 1, 2002. PNM objected, but provided a list of the positions that Plaintiff applied for. In your letter, you ask for a list of all positions filled since January 1, 2002, whether the positions have been filled, by whom and the salary. However, you wholly fail in your letter to explain why this information is relevant. We fail to see how information regarding positions filled after the reorganization that Plaintiff did not apply for are relevant. There has been no showing that PNM hired any employees to perform Plaintiff's duties or the Plaintiff was compared to other individuals hired for positions that Plaintiff did not apply for.

**Interrogatory No. 6.**

This Interrogatory seeks a list of all individuals with engineering degrees that were employed as of August 21, 2002. You argue that this is relevant as "it is clear from the documents produced to date that decisions were made concerning what engineers to retain and what engineers to transfer, promote and demote." We stand by our objections and do not agree that this information is relevant. The skill set assessment for Plaintiff was done by Plaintiff's supervisors, and the decision to impact Plaintiff's position was made by the supervisors. There has been no evidence that all engineers at PNM were compared to each other in making the

September 10, 2004
Page 4

decision on what positions to impact. Thus, the fact that somebody in a different department and different organization may have an engineering degree does not make it relevant to this case. Moreover, your Request fails to recognize the simple fact that Plaintiff is not automatically qualified for every engineering position simply because he has a mechanical engineering degree.

**Interrogatory No. 7.**

This Interrogatory asks for a list of all employees that have been terminated due to a reorganization since 1995. You argue that the information is relevant to determine "whether PNM has been using the RIF or reorganization process for the purpose of eliminating longer-term, older employees." We provided a list of individuals impacted on August 22, 2002. We fail to see how information regarding employees impacted on any date other than August 22, 2002 is relevant to Plaintiff's claims, and we know of no case law that would allow for such information. Decisions made in other reorganizations have nothing to do with Plaintiff's claim that the August 2002 reorganization was used for the purpose of eliminating longer-term, older employees. Additionally, it has nothing to do with Plaintiff's implied contract claim, except for the fact that Plaintiff knew because of reorganizations that he could be terminated for any reason.

You point out that we have made reference to seventy-two (72) employees, while PNM referred to eighty-five (85) employees and the EEOC response referenced eight-two (82). The reference to seventy-two employees, are the employees that were notified on August 22, 2002, the day that Plaintiff was impacted.

**Interrogatory No. 8.**

This Interrogatory seeks a list of all lawsuits over the last 30 years against PNM where claims were asserted against PNM or one of its employees for (1) breach of contract; (2) retaliatory or wrongful discharge; (3) employment discrimination; (4) retaliation; (5) 42 U.S.C §§ 1981, 1981A, 1983 or 1985 claims; (6) Title VII claims; (7) ADEA claims; (8) FLSA claims; (9) EPA claims; (10) ERISA claims; (11) NMHRA claims; and (12) "any other statutory claim asserted based on employment termination/retaliation." We provided information on lawsuits that arose out of the reorganization. You believe that this information is not sufficient and that the information sought is relevant to determine whether there are similar claims that have been asserted and you fail to see how providing this information would be burdensome. We fail to see how such information is relevant. How are lawsuits asserting claims of 42 U.S.C. 1981, 1981A, 1983, 1985, Title VII, FLSA, EPA and non age discrimination NMHRA against PNM claims over the last 30 years relevant to Plaintiff's claims? What case law do you have to support your argument that this information is relevant?

**Interrogatory No. 9.**

This Interrogatory asks for a list all documents relied on in terminating Plaintiff's employment. PNM objected to the extent the Interrogatory sought privileged documents. You

September 10, 2004
Page 5

argue in your letter that any such documents would not be privileged and request a privilege log. We will review the files and provide a privilege log if there are any such documents.

You also seek documents regarding the statistics cited in the EEOC response. This information was not covered by this Interrogatory, and regardless, is not relevant to this lawsuit as it deals with disparate impact claims, which are not allowed in the Tenth Circuit and Plaintiff has not asserted such a claim.

**Interrogatory No. 12.[1]**

This Interrogatory asks for a list of data bases that PNM keeps on employees, who maintains them and where. You complain in your letter that PNM's answer did not list where the PeopleSoft program can be accessed and who is responsible for maintaining it. We believe the Answer was sufficient. First, we do not see how such information is relevant. Second, the Interrogatory did not ask where the PeopleSoft program can be accessed. If you can describe with specificity why such information is relevant, then we may reconsider our Answer.

**Interrogatory No. 13.**

This Interrogatory asks for a list of all employees hired since August 2002 that has an engineering degree. You argue that PNM has claimed that it needed to reorganize and that PNM has claimed that Plaintiff did not have the appropriate skill set for the new direction the company was taking. Thus, you conclude that other engineer skill sets are relevant to determining the truthfulness of PNM's claims. We have provided you resumes of individuals hired for the positions that Plaintiff applied for. We do not believe that other positions that Plaintiff did not apply for are relevant, as there had been no showing that Plaintiff was compared to other individuals hired for positions that Plaintiff did not apply for.

**Interrogatory No. 14.**

This Interrogatory asks for a list of all documents that PNM received or sent to the Department of Labor that relate to the pension plan. In the answer, we referred you to the response to Request No. 10, which provided the Summary Annual reports, Annual Returns, and Financial Statements and Supplemental Schedules for 1999 to 2003. You appear to assert that these documents are not sufficient. What documents are you requesting? Under the law, Plaintiff is not entitled to inspect all documents related to the plan. The documents we provided are more than sufficient to provide you with information on the state of the Plan. We know of no other documents sent to the Department of Labor, which would be relevant to Plaintiff's ERISA claims. However, we will again search for any related documents.

---

[1] You refer to Interrogatory No. 10, but based on your discussion, you apparently are referring to Interrogatory No. 12.

September 10, 2004
Page 6

### Request for Production No. 2.

This Request seeks all documents that relate to the factors used by the decision makers that resulted in the reorganization and the impaction of Plaintiff's position. PNM provided the relevant documents that relate to the decision to reorganize and the impaction of Plaintiff's position. You request that if "there are documents related to or that refer or concern the factors and description of factors that were used by the decision makers then I request that these documents be produced." We do not understand what documents you are referring to and we have produced all relevant documents that we know of, which relate to the decision to reorganize and the impaction of Plaintiff's position.

### Request for Production No. 3.

This Request seeks the same information as asked for in Request No. 2, only related to the other employees whose positions were impacted. In your letter you specifically request the skill set assessments for the other departments. Despite these documents not being relevant, we produced to you skill sets for each of the individuals who were impacted on August 22, 2002 and the skill sets for those people who were placed in other positions. See the documents bates numbered 00708 to 00773 and 00854 to 00915.

### Request for Production No. 4.

This Request seeks all documents that "relate, refer, concern or pertain" to the organizational structure of PNM for certain time periods from January 2001 until the present. You argue in your letter that such information is relevant as "one of the reasons raised by PNM is that [sic] reorganization had been set up for some time in a regulation/deregulation chart." We do not understand what you are saying. If you clarify why you believe this information is relevant, we may reconsider our position. Moreover, it should be noted that PNM produced the before and after organization charts for Plaintiff's department.

### Request for Production No. 9.

This Request seeks "all documents used, relied on or referred to" in impacting the other employees as part of the August 2002 reorganization. You claim that this information is relevant to determine whether the process carried out for Plaintiff is similar to the process carried out with the other employees in order to determine PNM motivations. We fail to see how this information is relevant and it should be noted that this Request asks for the same documents as Request No. 3. Moreover, we have already provided you with the skill sets for the other employees whose positions were impacted on August 22, 2002 and who were placed in other positions.

September 10, 2004
Page 7

**Request for Production No. 10.**

This Request seeks "all documents that relate, refer, concern or pertain" to the status of the pension plan from 1996 to the present. You complain that PNM did not produce any "statements, memos or other documents related to concerns by stockholders or issues raised internally by PNM concerning the" pension plan. We provided you with the Summary Annual Reports, the Annual Reports and the Financial Statements and Supplemental Schedules for the years 1999 to 2003. We believe this information is more than sufficient. If you are specifically referring to certain documents, then please identify them and we will provide them if they are relevant to this lawsuit.

**Request for Production No. 11.**

This Request seeks "all documents that relate, refer, concern or pertain" to the impact of the reorganization on the employees. We fail to see how this information is relevant to Plaintiff's claims.

Additionally, in your letter, you request information related to the statistics cited in the EEOC response. See our response on page 5 in this regard.

**Request for Production No. 12.**

This Request seeks "all documents that relate, refer, concern or pertain" to any reduction in forces, reorganization, or employee layoffs during the last 20 years. You argue that the information is relevant to Plaintiff's claim that "while he had an implied contract to only be fired for cause, he also had an implied contract to rely on [sic] that any layoff would be conducted in a particular manner." You also argue that the only way to compare whether the reorganization was done inconsistently and to the disadvantage of older and longer term employees is to compare it with prior reorganizations. Finally, you argue that how PNM carried out prior reorganizations is relevant to PNM's motive.

We fail to see how all documents related to other reorganizations are relevant. If you would consider narrowing your request by the type of document and the reorganization, then we may reconsider our answer.

**Request for Production No. 13.**

This Request seeks all Watson Wyatt documents from January 2000 to the present. First, we fail to see how such documents are relevant to Plaintiff's claims. Second, you state that you are in possession of an Alice Cobb document relating to older workers. Such a document was covered by PNM's discovery requests to Plaintiff and needs to be produced by Plaintiff, if it has not already.

September 10, 2004
Page 8

### Request for Production No. 14.

This Request seeks the personnel files for Plaintiff, Wayne Sowell and all individuals that were hired as engineers from August 1, 2002 to the present. We provided you with Plaintiff's personnel file, and desk files of Wayne Sowell and Crista Belt. We also produced for each position that Plaintiff applied for, the resume of the individual hired, if anyone, and the job posting. You argue that the personnel file for Mr. Sowell is relevant with respect to his history with employees he supervises. We fail to see how Mr. Sowell's personnel file is relevant to the issue of Plaintiff being a poor work order writer, which he himself has admitted. Your attempt to get the personnel file is nothing more that an attempt to harass Mr. Sowell and create a smoke screen to cover up for Plaintiff's deficiencies.

You claim that the personnel files of the other engineers are relevant to determine if the skill sets are accurate or manufactured. We disagree. However, if you would please explain with specificity why you believe they are relevant, we may reconsider our answer.

### Request for Production No. 15.

This Request seeks "all documents that relate, refer, concern or pertain" to the filling of engineer and construction manager related positions from January 1, 2001. We produced for each position that Plaintiff applied for, the resume of the individual hired, if anyone, and the job positing. You claim that all of the documents that PNM agreed to produce were not produced. What documents do you believe were not produced? As to the other positions, as we have discussed they are not relevant.

You also claim that there was a position that he applied for before the reorganization and that such documents should be produced. We fail to see how such documents are relevant.

You also claim that there were positions filled as part of the reorganization process that that he should have been considered for. What positions are you referring to and what is the basis for your assertion that he should have been considered for positions he did not apply for?

### Request for Production No. 17.

This Request seeks all versions of the employee handbooks and other employee policies from 1977 to the present. PNM produced relevant portions of the personnel policies in effect at the time of August 22, 2002. You argue in conclusory fashion that "rights that were created in between his hiring and termination cannot be taken away simply through PNM's unilateral modification" of the policies. We disagree, and believe that the case law is squarely contrary to your position. We fail to see how other versions of the handbook are relevant.

September 10, 2004
Page 9

**Request for Production No. 18.**

This Request seeks all documents related to the interviewing and hiring of employees from 1977 to the present.  PNM responded that all known documents related to the hiring of Plaintiff, if they exist, are part of his personnel file, which was produced.  You state in your letter, that this Request sought documents used by interviewing or hiring officials on what can be said and what cannot be said to perspective employees or to employees at the time of their hire."  You claim that these documents do exist.  If you are so sure they exist, then please provide us with more information, including who prepared them and when, so that we can do a more focused search for such documents. Incredibly, you seem to believe that every document ever created by a PNM employee is known and readily available.  As you well know, PNM is a large company and enormous numbers of documents are created every year.  You incorrectly presume that it is easy to locate all documents created over PNM's entire existence.  If these documents exist, there is no way for PNM to easily locate them.

**Request for Production No. 19.**

This Request seeks all documents that "would or could" have informed employees in 1977 that employment with PNM was at will.  You ask for PNM to provide the documents or state that they do not exist.  PNM does not know if such documents exist or not.  Again, you are asking for documents that, if they existed, would have been created almost 30 years ago.  To answer as you would like, is not reasonable.

**Request for Production No. 20.**

This Request seeks "all documents that relate, refer, concern or pertain" to Plaintiff's attempts to obtain employment with PNM and all other impacted employees attempts to obtain employment with PNM.  We fail to see how such information is relevant.  As discussed above, the only information that is relevant, is the information related to the positions that Plaintiff applied for, which has been provided.

**Request for Production No.  22.**

This Request seeks all documents submitted to or received from the EEOC or other agencies related to Plaintiff's discrimination claims or the reorganization.  You ask whether there are additional records that PNM is withholding related to Plaintiff's discrimination claims or the August 22, 2002 reorganization.  You then claim that there are tapes of meetings with Plaintiff, Wayne Sowell and Crista Belt.  As I have previously told you, PNM did not record such meetings.  The only tapes we have are the tapes secretly done by Plaintiff that you produced on August 30, 2004, the day before Plaintiff's deposition was scheduled to take place.  As for the EEOC file, we have already produced the documents we sent to the EEOC.  Any other documents that were not sent to the EEOC are clearly privileged.

September 10, 2004
Page 10

**Request for Production No. 24.**

This Request sought "all documents that relate, refer, concern or pertain" to the answer to Interrogatory No. 14. Interrogatory No. 14 sought a list of all documents sent to or received from the Department of Labor that relates to the pension plan. PNM produced the Summary Annual reports, the Annual Reports and the Financial Statements and Supplemental Schedules from 1999 to 2003. There are no known privileged documents that are being withheld.

**Request for Production No. 25.**

This Request seeks documents that relate to Thomas Golo and his employment and citizenship status. This Request also seeks Mr. Golo's employment files. Despite your assertion, PNM produced Plaintiff's applications, the job postings and the Notices of the Filing of an Application for Alien Employment Certification, which are bates numbered PNM/KORBIN 02180 to 02202.

In your letter, you ask for Golo's personnel file, arguing that it is relevant because "it appears" that Plaintiff was qualified for the position Golo held. You are wrong. The job posting stated that PNM was seeking an <u>electrical engineer</u>. As you well know, Plaintiff is not an electrical engineer. Thus, we fail to see how his personnel file or any other documents are relevant.

**Review of Original Records.**

You request that you be able to review the original records. The original records are not kept in such a manner as to make them available for ready review. Please identify by bates number which documents you would like to review so that we can locate those documents and make them available for your review.

Very truly yours,

KELEHER & McLEOD, P.A.

By: _____
John K. Ziegler

JKZ/mh1662

cc: Robert C. Conklin, Esq.